MARY L. FISHER, JULIA J. DE CAMP AND FLORENCE J. MORRIAM, APPELLANTS, *v.* CHARLES W. HERSEY, HENRY J. BOTCHFORD, GEORGE M. BOTCHFORD, AND OTHERS, RESPONDENTS.

*Employment of puffer — when it vitiates a sale — order — when appealable.*

The defendants employed a puffer to bid at a sale in partition in this action, with intent to impose upon the plaintiffs and induce them to bid more for the property than they otherwise would have done. The plaintiffs were thereby induced to purchase the property at a higher price than they otherwise would have given.

*Held,* that they were entitled to have the sale set aside absolutely, and that an order denying a motion therefor and compelling them to carry out the sale at a reduced price was appealable, and should be reversed.

APPEAL from an order made at a Special Term denying the plaintiffs' motion to set aside the sale in this action, and confirming the sale upon terms specified in the order.

The action was brought to obtain a partition or sale of certain premises, consisting of 800 acres of land in Lyonsdale, Lewis county, on which was a large tannery, owned by the plaintiffs and the defendant Hersey, in common. Each of the three plaintiffs owned one undivided eighth of the premises, and the defendant Hersey owned five-eighths. The defendants Botchford, as partners of Hersey, claimed an equitable interest in his share. The sale was had under the judgment entered in this action, and the property was struck off to the plaintiffs at the sum of $32,500. The principal ground, upon which the motion to set aside the sale was based, was that the plaintiffs were induced to bid a larger sum than they otherwise would have bid by the fraudulent acts of Hersey, in employing one Whittier, as a puffer, to enhance the price. The affidavits read on the motion were conflicting, and the matter was sent to a referee to take evidence and report what

was the market-value of the premises on the day of the sale, and whether any fraud was practiced on the part of the defendant, Hersey, affecting the sale, or the bidding of the plaintiffs, and contributing to the purchase, and if any, what it was, and to file the proofs. The referee reported that the value of the property at the time of sale was $30,000. He also reported that some days before the sale Hersey, who lived in Boston, requested Whittier, who also lived in Boston, and was a leather dealer there, to attend the sale and bid upon the property, and it was agreed between them that Whittier should conceal from the plaintiffs the fact that he was acquainted with Hersey, and that there should be no recognition between them at the sale. That in pursuance of that agreement, Whittier went to the plaintiffs a few days before the sale and represented to them that he was from the city of New York, had seen the notice of sale and wished to know the terms of sale and to inspect the tannery, and that he had a young friend who wished to engage in the business of tanning with him. Later in the same day he informed the husbands of two of the plaintiffs (the plaintiffs being married women) that he had visited the tannery and was favorably impressed with it, and he wished to know if, in case the plaintiffs purchased the property, he could buy it of them for $35,000, and if not, whether he could rent it, and was told that the plaintiffs did not wish to rent, but wanted to sell. On being asked for his address, he gave it as follows: "I. Whittier, care of B. C. Wright, Grand Central Hotel, N. Y." This interview was communicated to the plaintiffs. Whittier attended the sale and bid upon the property, but there was no recognition between him and Hersey, and they appeared to be entire strangers to each other. The first bid was made by Hersey at $25,000; the plaintiffs then bid $30,000; Whittier bid $32,000; after some consultation the plaintiffs then bid $32,500, and Whittier soon after withdrew from the sale and went away in the cars. After the property was struck off to the plaintiffs they telegraphed to Whittier at New York that they had bought the property and would sell to him at $35,000, and two days afterwards they received a despatch from him dated at New York, saying that he had decided to do nothing about the tannery. The referee also reported that Whittier resided in Boston and not in New York;

that he and Hersey were well acquainted with each other ; that Whittier had no young friend or other person who wished to engage in the business of tanning with him, unless it was Hersey, who was of mature years ; and that Whittier did not desire or intend to purchase the property of the plaintiffs for the sum of $35,000, or to rent it of them.   He further reported that the representations and acts of Whittier, reported by him, were calculated to, and did deceive the plaintiffs, and cause them to bid off the property under the belief that Whittier desired to and would purchase the same of them for the sum of $35,000, and caused them to bid a larger sum than they would have bid, except for such belief ; and to that extent the acts and untrue representations made by Whittier, in pursuance of his agreement with Hersey, were a fraud upon the plaintiffs.

On the coming in of the referee's report, the Special Term made an order setting aside the sale and directing a re-sale, unless defendants stipulated that plaintiffs' bid be reduced to $30,000 and stand at that sum, and unless defendants pay certain costs of the motion and of the reference, as specified in the order ; and such stipulation being then and there given, it was further ordered that if the costs be paid as therein provided, the motion to set aside the sale be denied, and the sale confirmed, except that the bid be $30,000.   From that order the plaintiffs now appeal.

*C. D. Adams*, for the appellants.

*Walter Ballou*, for the respondents.

SMITH, J. :

The facts found by the referee relating to the question of fraud are established by evidence which, in most material particulars, is uncontradicted.   Not only did the defendant Hersey procure Whittier to act as a puffer at the sale, but by express arrangement between them, concealment and artifice were resorted to, to impose upon the plaintiffs, and induce them to bid more for the property than they would otherwise have done.   Laying out of view the misrepresentations made by Whittier before the sale, the conduct of Hersey and Whittier at the sale in pretending to be strangers to

each other, according to their preconcerted arrangement, shows very clearly that the bid of Whittier was procured by Hersey to be made, with the design of taking advantage of the eagerness of the plaintiffs to enhance the price. The employment of a puffer for such a purpose, and not merely as a defensive precaution against an undue sacrifice of the property, is a transaction that cannot be justified by a court of equity. (*Smith* v. *Clarke*, 12 Ves., 477; *Veazie* v. *Williams*, 8 How. [U. S.] R., 148; 2 Kent's Com., 537.)

The conduct of the defendant and of his instrument, Whittier, was a fraud upon the plaintiffs, and they are entitled to be released from their purchase, and to have the property re-sold. Merely reducing their bid to a sum considered to be the value of the property, and compelling them to stand purchasers at that sum, is dealing out to them but partial justice. For aught that appears, they would not have bid, even that sum for the property, but for the deceit practiced upon them. They are entitled to an opportunity to bid at a fair sale.

It is insisted by the respondents that the order of the Special Term is discretionary and not appealable. Not so. The plaintiffs are entitled, absolutely, to have the fraudulent sale set aside, and it is not a case for imposing terms on granting relief.

The order of the Special Term should be reversed, and a re-sale ordered under the judgment, with ten dollars costs and disbursements of the appeal, and the costs of prior motion at Special Term, and the fees of referee and disbursements on reference to be paid by the defendant Hersey to the plaintiffs.

TALCOTT, P. J., concurred; HARDIN, J., not sitting.

So ordered.